IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEFFEREY CLEMENS,

    Plaintiff,

v.

NANCY BERRYHILL,
Acting Commissioner of the Social Security
Administration,

    Defendant.

Civ. No. 3:16-cv-02123-MC

OPINION AND ORDER

MCSHANE, Judge:

    Plaintiff Jefferey Clemens brings this action for judicial review of the Commissioner's decision denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"). This court has jurisdiction under 42 U.S.C. § 405(g).

    On January 7, 2013, Clemens filed an application for DIB, alleging disability as of March 15, 2007. After a hearing, the administrative law judge ("ALJ") determined Clemens was not disabled under the Act from March 15, 2007, through December 31, 2012, his date last insured. Tr. 14–28.[1] Clemens argues the ALJ erred by not finding "failed back surgery syndrome" among his severe impairments, improperly discounting his symptom testimony, and failing to account for a discrepancy between the vocational expert's ("VE") testimony and the *Dictionary of Occupational Titles* ("*DOT*"). Because the Commissioner's decision is not based on proper legal

---
[1] "Tr." refers to the Transcript of the Social Security Administrative Record provided by the Commissioner.

1 – OPINION AND ORDER

standards and not supported by substantial evidence the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, I review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies his burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. §§ 404.1520 & 416.920. At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden,

then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v) & 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001).

Clemens, nearly 44 years old on his alleged onset date and nearly 50 years old on his date last insured, spent the vast majority of his life working as a baker. He alleged disability based on a back injury, which required multiple surgeries. The ALJ found Clemens's testimony not entirely credible. The ALJ determined Clemens had the severe impairments of: degenerative disc disease of the lumbar spine, rheumatoid arthritis, and gouty arthritis. Ultimately, the ALJ resolved that Clemens retained the RFC to perform light work, except he should be limited to two hours standing or walking rather than the standard six hours for light work, and a number of other limitations Clemens does not contest. The VE opined someone with Clemens's RFC as constructed by the ALJ could perform the jobs of small products assembler and storage facility rental clerk. Therefore, the ALJ concluded Clemens was not disabled under the Act. I address each of Clemens's argument in turn.

I. **Severe Impairments**

Clemens asserts the ALJ erred in finding "failed back surgery syndrome" neither medically determinable nor severe at step two in three conclusory sentences in his opening brief. Pl.'s Br. at 5 (ECF No. 24). Because the issue was not argued with specificity I may affirm the ALJ on that basis alone. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 n.2 (9th Cir. 2003) ("[I]ssues not argued with specificity in briefing will not be addressed.").[2]

---

[2] The Court also declines to address Clemens's three pages of argument in his Reply Brief regarding the purported distinction between failed back surgery syndrome and degenerative disc disease. *See Paladin Assocs., Inc. v. Mont. Power Co.,* 328 F.3d 1145, 1164 (9th Cir. 2003) (noting that reviewing courts "ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief").

However, if I were to consider it, the argument fails. Even assuming *arguendo* the ALJ erred in neglecting to list "failed back surgery syndrome" as a severe impairment at step two, the error is harmless because the ALJ considered the effect of Clemens's back impairments and functional limitations at subsequent steps. *Brookins v. Colvin*, No. 6:15-cv-01119-MC, 2016 WL 6122457, at *6 (D. Or. Oct. 19, 2016) ("Omissions at step two are harmless if the ALJ's subsequent evaluation considered the effect of the impairment omitted at step two.") (citing *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)); *see also Burch v. Barnhart*, 400 F.3d 676, 682–83 (9th Cir. 2005) (explaining that any error in omitting an impairment from the severe impairments at step two is harmless where step two is resolved in claimant's favor). Here, the ALJ resolved step two in Clemens's favor and considered the effects of his failed back surgeries in the context of degenerative disc disease of the lumbar spine, which the ALJ found severe at step two. Accordingly, the ALJ's step two finding is affirmed. *Lewis*, 498 F.3d 911.

## II. Weight of the Claimant's Testimony

Next, I turn to Clemens's argument that the ALJ erred in finding him less-than-credible. "Where, as here, Claimant has presented evidence of an underlying impairment and the government does not argue that there is evidence of malingering, we review the ALJ's rejection of her testimony for 'specific, clear and convincing reasons.'" *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). An ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina*, 674 F.3d at 1112 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989)). The ALJ "may consider a range of factors in assessing credibility." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent
> with the alleged symptoms; (2) whether the claimant takes
> medication or undergoes other treatment for the symptoms; (3)
> whether the claimant fails to follow, without adequate explanation,
> a prescribed course of treatment; and (4) whether the alleged
> symptoms are consistent with the medical evidence.

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007). However, a negative credibility finding made solely because the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence" is legally insufficient. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Nonetheless, the ALJ's credibility finding may be upheld even if not all of the ALJ's rationales for rejecting claimant testimony are upheld. *See Batson*, 359 F.3d at 1197.

The Commissioner asserts the ALJ properly discounted Clemens's testimony because it was not consistent with the objective medical evidence. Def.'s Br. at 6–9 (ECF No. 25). The ALJ found that despite Clemens's complaints of pain "the objective medical records show that the claimant's [January 2009] surgery was generally successful" and cites a May 2009 x-ray that showed "no sign of lumbar instability." Tr. 22 (citing Tr. 724). The Commissioner also cites reports of Clemens's pain level being reduced to four or five out of ten. The ALJ and Commissioner both mischaracterize the record, which is replete with reports of continuing pain following the January 2009 surgery. *See, e.g.,* Tr. 346 (noting steroid shots "did not provide sustained relief" and recommending surgery as "probably the best option for trying to treat his pain"); Tr. 358 (noting relief of leg pain, but his "back is his limiting factor now"); Tr. 364 (noting leg pain had abated, but back pain was worse "than it was preoperatively"). Moreover, the ALJ's own decision undermines his finding that the "surgery was generally successful" by acknowledging Clemens required "redo" surgery several months later. Tr. 22. A surgery that necessitates a second operation only months later can hardly be considered successful.

5 – OPINION AND ORDER

As to the August 2009 surgery, just a month later Clemens's treating surgeon reported he "continues to have back pain . . . essentially the same as it was" prior to surgery, and that he had "quite marked degenerative changes at L5 out of proportion to his other levels[.]" Tr. 326; *see also* Tr. 317–18 (preoperative report for February 2010 surgery noting that his prior two surgeries "did not result in relief").

The ALJ's finding of "improvement" following Clemens's February 2010 lumbar fusion fairs no better. Although the treatment notes remarked that Clemens initially recovered well post-operatively and that he could "walk at least five times per week for thirty minutes," Def.'s Br. at 7, it is unclear how that level of "improvement" contradicts Clemens's testimony, especially in light of the fact that during this time period he continued to require a cocktail of pain medications, including multiple narcotics. *See, e.g.,* Tr. 300, 314. The ALJ's citation to Clemens reporting pain levels at four out of ten in August 2010 to support the conclusion his pain was under control ignores the fact he presented at St. Vincent's Emergency Department with back pain just two weeks later, and necessitated a spinal cord stimulator implant to help alleviate his back pain in November 2010. Tr. 293, 452, 495–96.

Finally, substantial evidence does not support the ALJ's finding that "records show[ing] significant improvement" undermined Clemens's testimony that "pain returned after the spinal cord stimulator" implant. Tr. 22. The ALJ cited a stable postsurgical x-ray and noted that Clemens reported pain reduction in his leg. Tr. 22 (citing 287–88, 435–36). However, this evidence fails to undercut Clemens's testimony regarding his back pain because the ALJ erroneously conflated his leg and back pain. At most, the evidence cited by the ALJ showed the spinal cord stimulator reduced the pain in Clemens's leg, but that is far short of "significant improvement" as to his overall pain. Moreover, it fails to account for his back pain, which the

record reveals was his primary complaint. Finally, the same surgeon who implanted the 2010 spinal stimulator later explained the device only provided relief for a limited time and was later removed. Tr. 1121, 1513.

To the extent the Commissioner relies on the ALJ's observation that few treatment records exist after the spinal cord stimulator implant to support the conclusion that Clemens's symptoms had improved to the point they were no longer disabling, that rationale could justify discounting Clemens's allegation of disability for the time period after November 2010, but it is not a valid reason to discount the entirety of his testimony. Moreover, even if Clemens experienced limited improvement after November 2010, there is a sizeable gulf between tolerating pain levels and the ability to sustain gainful employment on a regular and continuing basis, as the Ninth Circuit has frequently reiterated. *See, e.g.*, *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001) (claimant need not be utterly incapacitated to receive disability benefits); *see also* Social Security Ruling ("SSR") 96-8p, *available at* 1996 WL 374184 ("A 'regular and continuing basis' means 8 hours a day, for 5 days a week[.]"). Accordingly, because the ALJ cherry-picked evidence to show that Clemens's testimony was inconsistent with the medical evidence, but glossed over the many reports of chronic pain and impaired functionality, this was not a clear-and-convincing reason to discount the entirety of Clemens's pain testimony. Even if Clemens had improved to the point of being able to sustain gainful employment after the spinal cord stimulator implant, the ALJ's decision fails to account for Clemens's symptom testimony through at least November 2010.[3] *See, e.g., Garrison v. Colvin*, 759 F.3d 992, 1017 (9th Cir.

---

[3] I also note that the Commissioner's Regulations and Rulings contemplate situations where an ALJ finds a claimant was disabled for only a portion of the alleged period and thereafter improved. *See, e.g.*, 20 C.F.R. § 404.1594 *et seq.*; SSR 83-20, *available at* 1983 WL 31249. On remand, the ALJ should consider whether Clemens's claim is more appropriately assessed with those standards in mind. As to the Commissioner's argument that Clemens's lack of treatment records following the November 2010 spinal stimulator implant undermined his symptom testimony through the date of last insured, Def.'s Br. at 9–11, the argument has some merit. However, because the ALJ erred in

7 – OPINION AND ORDER

2014) ("[T]he data points [the ALJ] choose[s] must *in fact* constitute examples of a broader development to satisfy the applicable 'clear and convincing' standard.") (emphasis in original).

The ALJ also provided a brief passage asserting Clemens's activities of daily living contradicted his allegations. The ALJ pointed to Clemens's ability to manage his own personal care, take care of his children and animals, and prepare daily meals. *See* Tr. 26 (citing Tr. 207–209). Although Clemens reported he retained the ability to feed, dress, and bathe himself as well shave and use the toilet, the record also indicated he needs additional time to complete these tasks and required being reminded to do so. Tr. 209. While he reported he helped provide care for his children, the ALJ's finding was not clear-and-convincing, as the mere fact that Clemens cared for his "children does not constitute an adequately specific conflict" with his reported limitations to justify discounting his testimony. *See Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017). The "care for animals" the ALJ cited consisted merely of changing litter boxes for the two family cats, and Clemens's wife reported assisting with the task. Tr. 208. Although Clemens indicated that he is able to prepare a single meal per day, it required an inordinate amount of time, which suggests that he either takes breaks or works at a pace incompatible with normal workplace requirements. Tr. 209 (explaining Clemens spent two hours to prepare a single meal). As the Ninth Circuit has recently explained:

> The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by [ALJs] in social security disability cases.

---

rejecting Clemens's testimony for the period from at least January 2009 through November 2010, on remand the ALJ shall review Clemens's symptom testimony *de novo*.

*Garrison*, 759 F.3d at 1016.[4]

The Commissioner's reliance on *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998), and *Batson*, 359 F.3d at 1196, is unavailing. Both of those cases relied on far more robust activities of daily living to support the ALJs' findings of contradictions with symptom allegations. The Commissioner's *post hoc* citation to additional activities not articulated by the ALJ, essentially asks the Court to affirm on a ground not invoked by the agency in its decision. I decline the Commissioner's invitation. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."). Moreover, the argument fails on the merits because the Ninth Circuit has repeatedly instructed that "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan,* 260 F.3d at 1050. Accordingly, the supposed inconsistencies between Clemens's daily activities and his allegations do not satisfy the requirements of the clear-and-convincing standard. *See Garrison*, 759 F.3d 1016.

The ALJ's credibility determination is neither based on proper legal standards nor supported by substantial evidence and is therefore reversed.

**III. Vocational Expert Testimony and the Dictionary of Occupational Titles**

Finally, Clemens argues the ALJ erred at step five because he relied on VE testimony that conflicted with the *DOT*. Pl.'s Br. 5–6; *see also* Pl.'s Rep. Br. at 4–6 (ECF No. 26). Specifically,

---

[4] The Commissioner also relies on the ALJ's observation that Clemens had a family trip to Disneyland *planned* for June 2011, arguing it supports the conclusion Clemens's symptoms were not as severe as alleged. As discussed *supra* at n.3, Clemens impairments may well have improved at different points in the relevant time period, but to what extent remains unclear in light the ALJ's decision. Moreover, this independent fact is not a clear-and-convincing reason to discount the whole of Clemens's symptom testimony.

9 – OPINION AND ORDER

Clemens argues that while the ALJ found he could be on his feet for two hours per day, that finding conflicted with the VE's identification of two "light level" jobs, which "by legal definition, require [being on one's] feet six hours per eight-hour workday." Pl.'s Br. at 5–6 (citing SSR 83-10, *available at* 1983 WL 31251). The Commissioner responds that: (1) the VE's testimony did not actually conflict from the *DOT* because "not *all* jobs that are classified as light work require standing or walking for six hours in an eight-hour work day"; and (2) at the hearing, the "ALJ asked the VE to offer a reasonable explanation for any deviation from 'the standing limitations that are standard for light work' [to which the] VE responded his testimony was based on his extensive experience as a 'rehab counselor.'" Def.'s Br. at 14–15 (citing 20 C.F.R. § 404.1567(b) & Tr. 65) (emphasis in original).

On the first point, I agree with Clemens that a conflict exists as confirmed by the record of the administrative hearing:

> ALJ: [W]e've talked about deviating from the standing limitations that are standard for light work. Those issues are not directly addressed in the *Dictionary of Occupational Titles*. What is that testimony based on?
>
> VE: Twenty-eight years as a rehab counselor, your honor.
>
> ALJ: All right. And has the remainder of your testimony been consistent with the *Dictionary of Occupational Titles*?
>
> VE: It has been, your honor.

Tr. 65; *see also* Tr. 63 (ALJ: "And so both [small products assembler and storage facility rental clerk], even though they're designated as light, they wouldn't require—in practice wouldn't require standing six of eight hours?" VE: "Correct."). When there is a conflict between the testimony of the vocational expert and the *DOT*, SSR 00-4p directs an ALJ to "elicit a reasonable explanation for the conflict before relying on the VE" testimony. SSR 00-4p, *available at* 2000

WL 1898704 at *2. The Ninth Circuit has upheld an ALJ's reliance on expert testimony that "contains persuasive evidence to support the deviation." *See Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995); *see also Ruiz v. Colvin*, 638 F.App'x 604, 607 (9th Cir. 2016) (upholding deviation from *DOT* where the VE testimony "was based on his experience placing people in those jobs as a vocational rehabilitation counselor").

Regarding the second point, however, although the ALJ's written decision appears to contradict the VE's testimony at the hearing finding the "vocational expert's testimony is consistent with the information contained in the *Dictionary of Occupational Titles*," any error was harmless because the VE provided persuasive evidence for the deviation testifying it was based on his twenty-eight years of experience at the hearing. Tr. 27, 62–65; *see also Loyd v. Colvin*, No. 3:13-cv-00753-MC, 2014 WL 3579468, at *3 n.6 (D. Or. July 21, 2014) ("Thus, any omission in the written decision constitutes a harmless error.") (citing *Molina,* 674 F.3d at 1115).

## IV. Remand

As the ALJ erred, the question is whether to remand for further administrative proceedings or an award of benefits. Generally, "when an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.' " *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)). However, an award of benefits can be directed "where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Remand for calculation of benefits is only appropriate where the credit-as-true standard has been satisfied, which requires:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed

> to provide legally sufficient reasons for rejecting evidence,
> whether claimant testimony or medical opinion; and (3) if the
> improperly discredited evidence were credited as true, the ALJ
> would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1020 (citations omitted).

The first element requires me to determine whether "the record has been fully developed and further administrative proceedings would serve no useful purpose." *Garrison*, 759 F.3d at 1020. "Administrative proceedings are generally useful where the record 'has [not] been fully developed,' *id.*, there is a need to resolve conflicts and ambiguities, *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995), or the 'presentation of further evidence . . . may well prove enlightening' in light of the passage of time, [*Immigration and Naturalization Service v. Ventura*, 537 U.S. 12, 18 (2002)]." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014). "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Id.*

Here, I find the record has not been fully developed and would benefit from further administrative proceedings. As discussed above, the ALJ failed to provide legally sufficient reasons for discrediting Clemens's symptom testimony. However, I find the record contains conflicts, especially in light Clemens's possible improvement after the November 2010 spinal cord stimulator implantation. Although the record contains evidence from the time period when Clemens had multiple back surgeries that arguably supports a conclusion that he was disabled, that finding is better left to the ALJ. Accordingly, I remand this matter for further administrative proceedings to: (1) reevaluate Clemens's symptom testimony, specifically with instructions for the ALJ to consider whether Clemens was disabled for a portion of the period at issue and thereafter medically improved in accordance with the Commissioner's applicable Regulations and Rulings; (2) obtain additional VE testimony based on a reformulated RFC incorporating all

of Clemens's limitations, and inquiring into conflicts between the VE testimony and *DOT*, if applicable; and (3) conduct any additional necessary proceedings.

## CONCLUSION

The ALJ's decision is not based on proper legal standards nor supported by substantial evidence. Therefore, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this 10th day of April, 2018.

                                              s/Michael J. McShane\_
                                                      Michael McShane
                                           United States District Judge